DeWITT LANNING, PROSECUTOR, v. HUDSON COUNTY COURT OF COMMON PLEAS, THOMAS H. BROWN, JUDGE, AND MICHAEL J. GILL, WARDEN OF HUDSON COUNTY PENITENTIARY, RESPONDENTS.

Submitted May 6, 1941—Decided July 17, 1941.

Before Justices BODINE, PERSKIE and PORTER.

For the prosecutor, *Raymond Chasan* (*Leo Rosenblum,* of counsel).

For the respondents, *Charles Hershenstein.*

The opinion of the court was delivered by

PERSKIE, J. The single question requiring decision in this cause is whether the First Criminal Court of Jersey City has jurisdiction to try and determine violations under the "Disorderly Persons Law." *R. S.* 2 :201-1, *et seq.*

The facts which give rise to the stated question are free from dispute. Prosecutor was adjudged a disorderly person (*R. S.* 2 :201-1, *et seq.*), in the First Criminal Court of Jersey City. He was sentenced and committed to the Hudson County Penitentiary for a period of six months. On prosecutor's application, Judge Brown of the Hudson County Court of Common Pleas allowed a writ of *habeas corpus* to review the propriety of prosecutor's "imprisonment, detention or restraint." *R. S.* 2 :82-12. Upon the return of the writ, Judge Brown conducted a hearing and "inquired into * * * [prosecutor's] confinement and restraint," and concluded that the First Criminal Court of Jersey City was a court of competent jurisdiction to try and determine, as it did, prosecutor's alleged violation of the "Disorderly Persons Law." Accordingly, Judge Brown dismissed the writ and remanded prosecutor to the Hudson County Penitentiary where he is presently confined. Chief Justice Brogan allowed a writ of *certiorari* to remove the proceedings into this court to review the propriety of proescutor's imprisonment, detention or restraint. *R. S.* 2 :82-48 and 2 :82-49.

Prosecutor contends here, as he did below, that the First Criminal Court of Jersey City was without jurisdiction to try and determine violations under the "Disorderly Persons Law," *supra,* and, therefore his conviction by that court and his resultant imprisonment, detention and restraint are illegal. In support of that contention it is argued that by chapter 200, *Pamph. L.* 1940, *p.* 856; *N. J. S. A.* 2 :212-1, *et seq.* (amending sections 2 :212-1, 2 :212-6, 2 :212-19, 2 :213-1 and 2 :214-5

of the Revised Statutes relative to Criminal Judicial District Courts) and, by chapter 201, *Pamph. L.* 1940, *p.* 859; *N. J. S. A.* 2:212-4.1, *et seq.* (creating First, Second, Third and Fourth Criminal Judicial District Courts in Hudson County), the courts so created were vested with "exclusive jurisdiction" to try and determine, among others, cases involving violations under the "Disorderly Persons Law."

Respondents on the other hand contend, of course, that Judge Brown correctly dismissed the writ. In support of that contention reliance is chiefly placed upon chapter 250, *Pamph. L.* 1939, *p.* 665; *N. J. S. A.* 2:206-3, providing for hearings under the disorderly persons law before a Police Court, *Criminal Court* or Recorder's Court in municipalities of which Jersey City is one.

Our consideration and determination of the question first stated as requiring decision are based upon a clearly charted course. It is a course which has for its support principles of long standing. If the alleged illegal confinement of prosecutor is by virtue of a "final judgment" or order (the finality of neither is here in dispute), and if the First Criminal Court of Jersey City is a "competent tribunal" to try and determine violations under the "Disorderly Persons Law" (*In re Scridlow,* 124 *N. J. L.* 342, 345; 11 *Atl. Rep.* (2d) 837), that is, if it is a tribunal of "unimpaired jurisdiction" (*In re Tremper,* 129 *N. J. Eq.* 274, and cases collated at page 276; 19 *Atl. Rep.* (2d) 342), then, both under our decisions of which the cited cases are typical and under our statute relative to *habeas corpus, R. S.* 2:82-13, (b), prosecutor was not, and is not entitled to prosecute this writ.

Solely then for the purpose of determining the "competency," the "unimpaired jurisdiction" of the First Criminal Court of Jersey City to render its challenged judgment or order, by virtue of which prosecutor is allegedly illegally confined, and not the "competency" nor "unimpaired jurisdiction" of any other tribunal or tribunals, let us turn to the several statutes upon which the respective parties rely and briefly analyze their history.

It is conceded that chapters 200 and 201 of *Pamph. L.* 1940, *supra,* have for their genesis chapter 204 of *Pamph. L.* 1926,

*p.* 337. This act (1926) and the various amendments thereof and supplements thereto, so far as the same may be applicable, were made to apply to the four Criminal Judicial Districts created by chapter 201, *Pamph. L.* 1940; *N. J. S. A.* 2:212-4.1, *et seq.*

By section 4 of the act of 1926, *supra,* each court created by said act was made a "criminal court with exclusive criminal jurisdiction in matters committed to it [by the act] within the territory comprised by the criminal judicial district in which it exists" and each court was additionally given "concurrent jurisdiction" with the several *recorders, police judges* and *justices of the peace* to try violations of municipal ordinances.

By section 6 of the act of 1926, *supra,* each criminal court was given jurisdiction to try and determine specifically named offenses and was also given the jurisdiction to try and determine cases for violations under the "act entitled, 'An act concerning disorderly persons.'" By subsequent amendments (chapter 121, *Pamph. L.* 1927, *p.* 228, and chapter 201, *Pamph. L.* 1928, *p.* 371) the jurisdiction to try and determine cases under the "Disorderly Persons Law" was made exclusive.

While it is true that, by the act of 1926 and its amendments and supplements as aforesaid, the legislature granted exclusive jurisdiction in all criminal cases theretofore exercised by *"recorders, police justices and justices of the peace* to the Criminal Judicial District Courts thus created," it is equally true that these courts were also given, in certain cases, concurrent jurisdiction with recorders, police justices and justices of the peace. Moreover the grant of exclusive criminal jurisdiction in all criminal cases, as aforesaid, could not be without its limitations with respect to a constitutional officer, for example, a justice of the peace. *Tomai* v. *Savastano,* 112 *N. J. L.* 362; 170 *Atl. Rep.* 615.

On December 20, 1937, the legislature adopted the revision of our public laws. From this revision (Title 2, chapter 213, Jurisdiction, *R. S.* 2:213-1, *et seq.*), we learn that the legislature subdivided the jurisdiction of the Criminal Judicial District Courts into "exclusive jurisdictions"

(2:213-1), and "concurrent jurisdiction" (2:213-2), &c. The subdivision as to "exclusive jurisdiction" reads as far as is here pertinent as follows:

*"Except as otherwise specifically provided by law,* each criminal judicial district court shall have exclusive criminal jurisdiction within the territory comprised by the criminal judicial district in which it exists in all criminal cases heretofore exercised by recorders, police justices and justices of the peace and in all matters committed to it by this chapter."

*"Except as otherwise specifically provided by law,* each criminal judicial district court shall also have, possess and exercise exclusive jurisdiction to try and determine cases for violations of (a) subtitle 15 of this title (Sec. 2:201-1, *et seq.*); * * *."

Thereafter the legislature, in 1939, enacted chapter 250, *Pamph. L.* 1939, *p.* 665, now *R. S.* 2:206-3, which provides as follows:

"In municipalities [of which Jersey City is one] having or which may hereafter have a police court, *criminal court* or recorder's court, all persons arrested for violations of this subtitle shall be taken for a hearing before such court, and no justice of the peace shall have power to hear, try, or determine such cases in those municipalities, any law, custom or usage to the contrary notwithstanding."

Finally the legislature, in 1940, enacted chapters 200 and 201, *Pamph. L.* 1940, *supra.* By chapter 200, *Pamph. L.* 1940; *N. J. S. A.* 2:212-1, *et seq.*, each Criminal Judicial District Court created in Hudson County by chapter 201, *Pamph. L.* 1940; *N. J. S. A.* 2:212-4.1, *et seq.*, was given the additional exclusive jurisdiction "to try and determine all cases for any and all violations * * *" of certain specifically enumerated sections of the law relating to elections.

Parenthetically, we mark the fact, at this point, that neither in *R. S.* 2:213-1 (in existence at the time of the adoption of the revision in 1937), nor in *N. J. S. A.* 2:212-1, *et seq.* (chapter 200, *Pamph. L.* 1940), is reference to be found to a "criminal court" or "judges of city criminal courts." But specific reference to the former is found in *R. S.* 2:206-3 (chapter 205, *Pamph. L.* 1939), and specific reference to the

latter is found in the definition of "magistrates" under the act concerning disorderly persons. *R. S.* 2:201-2.

We further mark the fact that save as to the additional grant of exclusive jurisdiction, as aforesaid, the language of chapter 200, *Pamph. L.* 1940, is identical, word for word, with the language employed in *R. S.* 1937, 2:213-1, *et seq.*, and that save as to this illegal grant of jurisdiction, we have held that chapters 200 and 201, *Pamph. L.* 1940, *supra*, are free from "constitutional inhibition." *Wilentz* v. *Galvin*, 125 *N. J. L.* 455; 15 *Atl. Rep.* (2d) 903. We further mark the fact that the prefatory phrase, "Except as otherwise specifically provided by law," appears for the first time in *R. S.* 1937, 2:213-1, *et seq.*, that is, at the time of the adoption of the revision of our public laws. It next appears in chapter 200, *Pamph. L.* 1940; *N. J. S. A.* 2:212-1, *et seq.*

What is the efficacy of this prefatory phrase? Does it, as contended by respondents, "except" the "unimpaired jurisdiction" specifically provided by law in "criminal courts," such as here, to try and determine violations under the "Disorderly Persons Law?" We think so.

It is argued for prosecutor (as in the brief for petitioner in the case of *Carrick* v. *First Criminal Court of Jersey City*, 126 *N. J. L.* 598; 20 *Atl. Rep.* (2d) 509, which was also submitted to us by *amicus curiæ* in the case at bar) that the stated prefatory phrase somehow "crept" into the revision and then into chapter 200, *Pamph. L.* 1940 as a stock legislative phrase, used throughout the revision, but with "no intent [on the part of the legislature] to change the subject of the enactment themselves."

We, of course, have no way of knowing whether, as claimed, the prefatory phrase meaninglessly "crept" into the legislation in question. Nor are we privileged to speculate as to unexpressed purposes or intentions of legislative enactments. The fact is that the prefatory phrase is a part of the legislation in question. That legislation (*R. S.* 1937, 2:213-1), as written, became the public law of our state upon the adoption of the revision in 1937. *Duke Power Co.* v. *Somerset County Board of Taxation (Court of Errors and Appeals)*, 125 *N. J. L.* 431; 15 *Atl. Rep.* (2d) 460. So, too, *N. J. S. A.* 2:212-1,

*et seq.* (chapter 200, *Pamph. L.* 1940), save as to the afore-stated illegal grant of jurisdiction therein, is the present public law of our state.

We are no more privileged, as suggested, to disregard the clear meaning of the prefatory phrase "Except as otherwise specifically provided by law," than we would be to supply such a phrase to comprehend a *"casus omissus." Cf. Public Service Co-ordinated Transport* v. *State Board of Tax Appeals,* 115 *N. J. L.* 97; 178 *Atl. Rep.* 550. We are obliged to give purposeful significance to words used by the legislature and if at all possible to give effect thereto. *Cf. Crater* v. *Somerset County,* 123 *N. J. L.* 407; 8 *Atl. Rep.* (2*d*) 691. The presumption is against useless legislation. *Cf. Alexander* v. *Cunningham Roofing Co.,* 124 *N. J. L.* 390; 11 *Atl. Rep.* (2*d*) 41; *affirmed,* 125 *N. J. L.* 277; 15 *Atl. Rep.* (2*d*) 612.

The legislature is charged with the knowledge of its own enactments. With full knowledge of the existence of the prefatory phrase "Except as otherwise specifically provided by law," in *R. S.* 2:213-1 (1937), it enacted *R. S.* 2:206-3 (chapter 250, *Pamph. L.* 1939, Sources *Pamph. L.* 1898, ch. 239, § 44, *p.* 955; *Comp. Stat., p.* 1938, § 44) and specifically granted jurisdiction to "criminal courts" of which the First Criminal Court of Jersey City is one, to try and determine violations under the "Disorderly Persons Law." With full knowledge of the existence of *R. S.* 2:206-3, the legislature enacted *N. J. S. A.* 2:212-1, *et seq.,* here involved, and again prefaced that legislation with the cited prefatory phrase.

If the language of the prefatory phrase does not comprehend *R. S.* 2:206-3, then plain English words no longer have their acknowledged meaning. Thus we hold that whatever the jurisdiction of Criminal Judicial District Courts here may be to try and determine violations under the "Disorderly Persons Law" (*N. J. S. A.* 2:212-1, *et seq.*), that jurisdiction did not render the First Criminal Court of Jersey City "incompetent," or "impair" the jurisdiction specifically granted to it by *R. S.* 2:206-3 to try and determine violations under the "Disorderly Persons Law."

Accordingly, the writ is dismissed, with costs.