### McGARTY v. O'BRIEN, Warden.

No. 4458.

United States Court of Appeals
First Circuit.

March 27, 1950.

Writ of Certiorari Denied May 29, 1950.
See 70 S.Ct. 1002.

James Seligman, Fall River, Mass. (William C. Crossley, Fall River, Mass., and William H. Lewis, Jr., Boston, Mass., with him on the brief), for appellant.

Henry P. Fielding, Assistant Attorney General, Massachusetts (Francis E. Kelly, Attorney General, Massachusetts, Lawrence E. Ryan, Assistant Attorney General, Massachusetts, and Maurice M. Lyons, District Attorney, Southern District of Massachusetts, New Bedford, Mass., with him on brief), for appellee.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and SWEENEY, District Judge.

MAGRUDER, Chief Judge.

Charles McGarty appeals from an order of the court below dismissing without prejudice his petition for a writ of habeas corpus.

On August 4, 1947, McGarty killed his eight-year-old niece under most revolting circumstances. Thereafter, the grand jury for the county of Bristol, Massachusetts, returned an indictment against him for

murder, to which indictment he pleaded not guilty. McGarty filed a motion in the superior court setting forth that he was charged with a capital crime and was without funds to procure counsel, and requesting the court to assign James Seligman, Esq., as his counsel. The request was granted.[1]

This being a capital case, it was mandatory under Mass.G.L.(Ter.Ed.) c. 123 § 100A, as amended by St.1941, c. 194, § 11, for the clerk of the superior court to give notice to the department of mental health, "which shall cause such person to be examined with a view to determine his mental condition and the existence of any mental disease or defect which would affect his criminal responsibility." The psychiatric report from the department must be filed with the clerk of the court, where it is to be made accessible to the court, the probation officer, the district attorney, and the attorney for the accused. Commenting on this statute in Commonwealth v. Devereaux, 1926, 257 Mass. 391, 396, 153 N.E. 881, 882, Rugg, C.J., stated: "It is a matter of general knowledge that there are in the service of the commonwealth under this department persons eminent for special scientific knowledge as to mental diseases. The examination under the statute, therefore, may fairly be assumed to have been made by competent persons, free from any predisposition or bias and under every inducement to be impartial and to seek for and to ascertain the truth." The law has been commended as having established an enlightened procedure which has protected the rights of mentally incompetent accused persons whose insanity might otherwise have gone unrecognized, and which has reduced to a negligible number the "battles of experts" which have in the past brought discredit upon psychiatric expert testimony. Overholser, The Briggs Law of Massachusetts: A Review and an Appraisal, 25 J. Crim.L. & Criminology 859 (1935).

McGarty was examined on behalf of the department of mental health by Doctors R. M. Chambers and Roderick B. Dexter. No question has been raised as to their professional competence or as to their impartiality in making the examination and report. Their report, which was duly filed in court December 23, 1947, found that McGarty "is neither feebleminded nor insane, and that he does know the difference between right and wrong. We do believe, however, that the anti-social tendencies which he has presented since early childhood warrant a diagnosis of Psychopathic Personality and he has been so classified." Finally, the report concluded with the expression of opinion that "this prisoner is not suffering from any mental disease or defect which would affect his criminal responsibility."

On January 15, 1948, counsel for McGarty filed a motion asking that the defendant, being without funds, "be allowed to employ two psychiatrists at the expense of the Commonwealth so that he may properly defend himself against the crime as charged by the Commonwealth." This motion was denied, to which exception was saved. McGarty went to trial, the jury brought in its verdict of guilty of murder in the first degree, and he was sentenced to death. Upon appeal to the Supreme Judicial Court, the judgment of conviction was affirmed. Commonwealth v. McGarty, 1948, 323 Mass. 435, 82 N.E.2d 603. The defendant did not apply to the Supreme Court of the United States for a writ of certiorari.

One of the errors which was assigned on that appeal was the denial by the superior court of the defendant's motion to be allowed to employ psychiatric experts at the expense of the Commonwealth. It appears from defendant's brief filed in the Supreme Judicial Court that the alleged error of the superior court in this regard was predicated upon a provision of local law, namely, § 56 of c. 277, Mass.G.L.(Ter.Ed.) which states that "reasonable expenses incurred

---

1. Under § 55 of c. 277, Mass.G.L.(Ter.Ed.), the court may allow "reasonable compensation" to such assigned counsel for his services, the compensation to be paid by the county wherein the indictment was found. See also Rule 95 of the Superior Court Rules, under which a maximum compensation of $1000 may be allowed by the court.

and paid by counsel assigned by the court for the defence of a person indicted for murder, who is otherwise unable to procure counsel, shall be paid by the county where the indictment is found after approval by a justice sitting at the trial or other proceedings of the case." On this point the brief concluded: "While it is not contended by the defendant that this provision contains a mandate to the court to grant a motion that he be allowed to engage medical experts, nevertheless it is most emphatically urged that the gravity of the facts and circumstances surrounding him in connection with the most serious of allegations warranted an authorization for employment of medical experts to the end that all of his constitutional rights should be safeguarded."

Whatever might have been in the back of counsel's mind, we do not think that the foregoing extract from the brief may be taken as presenting to the state court a claim of violation of constitutional rights under the Fourteenth Amendment. The opinion of the Supreme Judicial Court indicates no awareness that a federal constitutional question was presented for decision. After referring to the conclusion of the report by the department of mental health, the court said, 323 Mass. at 437, 82 N.E.2d 603, 605: "We assume that the judge could have granted the motion under G.L.(Ter.Ed.) c. 277, § 56. But the matter was discretionary. Nothing in the medical report and nothing in the record indicated that the defendant was not mentally responsible. We find no error in the denial of the motion." At that point the court cited Commonwealth v. Belenski, 1931, 276 Mass. 35, 44, 176 N.E. 501, 505, in which the court had said: "Having been examined by impartial experts the defendant was not entitled as of right to a further examination at the public expense."

After the judgment of conviction was affirmed by the state court, McGarty filed in the court below his petition for a writ of habeas corpus. The petition set forth that the superior court had denied a motion that he be allowed, at the expense of the Commonwealth, "to employ medical experts to impartially examine him, and to be used, if necessary, as witnesses in his behalf"; that the denial of such motion had been affirmed on appeal; "that the petitioner was at the time and still is without funds, and that the denial of this opportunity to be examined by impartial medical witnesses was in violation of his constitutional rights under the Fourteenth Amendment of the Constitution, that he believes he is entitled to redress, that all his State remedies have been exhausted".

It is contended that the constitutional right of an indigent defendant in a capital case to court-appointed counsel is an empty right unless the state is also obliged to furnish such counsel the means to develop and present an appropriate defense. Obviously enough, an indigent defendant with assigned counsel may be at a disadvantage as compared with a wealthy defendant having unlimited means for the hiring of investigators, of expert witnesses, of a battery of lawyers. How far the state, having the obligation to afford to the accused a fair trial, a fair opportunity to make his defense, is required under the due process clause to minimize this disadvantage is a matter which, in other contexts, may deserve serious examination. We simply note that no such broad constitutional question is presented on the record now before us. This is not a case where the state has refused to provide an impartial psychiatric examination of the accused with a view to determining his sanity and criminal responsibility. In the present case, in compliance with a mandatory provision of law, the state has, at public expense, provided such examination, by two impartial experts; and their report has been made available to the defense. It is true that the report, because of the conclusion which the psychiatrists arrived at, was not useful to the defense in establishing a legal defense of insanity. But what the contention comes to is that the state, having provided this impartial psychiatric examination, is required by the due process clause to go further and supply defense counsel with funds wherewith to hunt around for other experts who may be willing, as witnesses for the defense, to offer the opinion that the accused is criminally insane; in effect, that failure to do so must be regarded as violating "a

'principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Bute v. Illinois, 1948, 333 U.S. 640, 659, 68 S.Ct. 763, 773, 92 L.Ed. 986.

The district court, in dismissing the petition for a writ of habeas corpus, did not adjudicate the merits of this constitutional claim, but took the ground that petitioner had not exhausted his remedies under state law. In affirming the order of the district court we similarly do not reach the merits.

As above indicated, McGarty has not up to this time presented to the state courts the federal constitutional claim now sought to be vindicated in a federal court. If there is still an available state procedure under which this constitutional claim may be pressed, the district court certainly acted rightly in dismissing the petition. This indeed is now expressly provided in 28 U.S.C.A. § 2254, as declaratory of the practice previously established by familiar precedent.

In c. 250 Mass.G.L.(Ter.Ed.), § 1, it is provided that writs of error in civil and criminal cases shall issue as of course from and be returnable to and be heard and determined by the Supreme Judicial Court. Section 9 of the same chapter provides: "A judgment in a criminal case may be reexamined and reversed or affirmed upon a writ of error for any error in law or in fact." Section 10 provides that writs of error in such cases "may be brought at any time after judgment". In Allen v. Commonwealth, 1949, 324 Mass. 558, 87 N.E.2d 192, sixteen years after Allen had been convicted of murder in the second degree and sentenced to life imprisonment, he sued out a writ of error in the Supreme Judicial Court, and procured an adjudication of his claim that he had been tried and convicted without benefit of counsel in violation of his rights under the Fourteenth Amendment. It appears, therefore, that a writ of error is an available state procedure for the presentation of the constitutional claim sought to be raised in the present petition for habeas corpus. Petitioner has not cited any state precedent to convince us that this is not so. Under 28 U.S.C.A. § 2254, the burden is on the petitioner to show that he has exhausted the remedies available in the courts of the state, or that there is either an absence of available state corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner. Under the circumstances, the district court committed no error in remitting McGarty to the pursuit of his remedy under state law.

We recognize the possibility that if petitioner should now sue out a writ of error in the Supreme Judicial Court under c. 250, § 9, as suggested by the court below, petitioner may be told by the state court that review of a judgment of conviction may not be had on writ of error, where the same judgment has already been reviewed and affirmed under the alternative procedure of appeal pursuant to c. 278, §§ 28 and 33B. Or he may be told that on the appeal he assigned as error the order of the superior court denying his motion for leave to employ psychiatric experts; that what he is seeking to do on writ of error is to challenge again the same order of denial, this time on an additional ground, a federal constitutional ground, which he could have and should have advanced on the earlier appeal; that the validity of the order of denial is now res judicata and under state law cannot be re-examined.

Whether the foregoing would be the outcome of a proceeding by way of writ of error we cannot know for sure until petitioner tries it out. But it is clear that petitioner should do that before calling upon a federal court to exercise the delicate jurisdiction of interfering with state processes. See United States ex rel. Kennedy v. Tyler, 1925, 269 U.S. 13, 17, 46 S.Ct. 1, 70 L.Ed. 138; Mooney v. Holohan, 1935, 294 U.S. 103, 113-115, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406. If it should eventually be determined that petitioner cannot by any state corrective process now available obtain a ruling by the state court on his constitutional claim, and if he should thereafter renew his application to the federal court for writ of habeas corpus, then the situation presented to the federal court would be somewhat different from that which faced the court below in its disposition of the present petition. It would

then be apparent that, through past failure to exhaust an obvious state corrective process in the time and manner prescribed by state law, the petitioner is without further state remedy to vindicate his federal claim. There are some indications that after a person has held back from asserting a federal claim until it is too late to assert it under ample procedure afforded by the state, a federal court is not obliged, at least in the absence of quite exceptional circumstances, to entertain a petition for habeas corpus and thus to repair the blunder by petitioner or his counsel. See Wade v. Mayo, 1948, 334 U.S. 672, 678, 68 S.Ct. 1270, 92 L.Ed. 1647. Cf. Sunal v. Large, 1947, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982. See also Note, 61 Harv.L.Rev. 657, 666 (1948). In capital cases it may be different. That problem is not now before us.

The order of the District Court is affirmed.