## UNITED STATES ex rel. AULD v. WARDEN OF NEW JERSEY STATE PENITENTIARY.

No. 10238.

United States Court of Appeals
Third Circuit.

Argued Oct. 17, 1950.

Decided Jan. 26, 1951.

616

John L. Morrissey, Camden, N. J., for appellant.

Eugene T. Urbaniak, Trenton, N. J., Mitchell H. Cohen, Camden, N. J. (Theo-dore D. Parsons, Atty. Gen. of New Jersey, on the brief), for appellee.

Before BIGGS, Chief Judge, and KAL-ODNER, and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

Auld was convicted of first degree murder, without recommendation of mercy, and sentenced to death by the Camden County Court, Criminal Division, New Jersey. The judgment of conviction was reversed for error and he was tried a second time. He was again convicted and sentenced as before and again appealed to the Supreme Court of New Jersey. That Court affirmed the conviction, State v. Auld, 2 N.J. 426, 67 A.2d 175, two Justices dissenting. Auld then sought reargument which was denied by the Supreme Court of New Jersey on September 7, 1949. He next filed an application for commutation of sentence to the Court of Pardons of New Jersey. He was denied any commutation of his sentence on December 2, 1949.

The time for filing a petition for certiorari to the Supreme Court of the United States expired ninety days after September 7, 1949, when the Supreme Court of New Jersey denied reargument, viz., on December 6, 1949, in accordance with Rule 38½ of the Supreme Court of the United States, 28 U.S.C.A., 335 U.S. 915, and Section 2101 (c) and (d), Title 28, United States Code Annotated. No petition for certiorari or application for extension of time was filed within the specified period. On January 16, 1950, a letter was addressed by one of Auld's counsel to Mr. Justice Burton asking for an extension of time in which to file a petition for certiorari. This application was denied on January 17, 1950, on the authority of Finn v. Railroad Commission, 286 U.S. 559, 52 S.Ct. 646, 76 L.Ed. 1293; Cresswell ex rel. Di Pierro v. Tillinghast, 286 U.S. 560, 52 S.Ct. 648, 76 L.Ed. 1293, and Robinson and Kirkham, "Jurisdiction of the Supreme Court of the United States," Section 386 (1936).

On March 7, 1950, a petition for writ of *habeas corpus* was filed in the court below and amended three days later. The petition alleges in substance that within forty-

eight hours after Auld's arrest, the Prosecutor of the Pleas of Camden County sent three psychiatrists to examine Auld while he was confined in the Camden County Jail; that these three doctors "acting under color of authority" proceeded to examine Auld not only as to his mental condition but also as to the circumstances of the crime itself; that Auld made very damaging admissions and that these were testified to by the psychiatrists during the course of his trial prejudicing the jury against Auld. The petition for *habeas corpus* asserts that at the time of Auld's examination by the psychiatrists he was not represented by an attorney and was unaware of his right to stand mute.

The petition also alleges that after the jury had retired to consider its verdict, a note was sent by the jurymen to the trial judge requesting information as to the five possible verdicts that the jury could return, and that the trial judge wrote out these five verdicts on a piece of paper having had them read to him by the court reporter from his charge to the jury. The paper apparently was then sent to the jury with the express consent of Auld's attorney and of the Prosecutor of the Pleas. It seems to be admitted that the acts complained of in the petition did take place.

Auld asserts that because of the foregoing he was denied due process of law guaranteed to him by the Fourteenth Amendment. The court below, having before it the record of Auld's second trial and the opinion of the Supreme Court of New Jersey on Auld's appeal, cited supra, ruled that it was without jurisdiction to grant a writ of *habeas corpus* to the petitioner and also

that the amended petition did not show denial of due process of law. The appeal followed.

The acts complained of by Auld, as we have indicated, were brought to the attention of the Supreme Court of New Jersey on Auld's appeal. That Court held that though the resubmission of the five possible verdicts to the jury by the trial court's note was error, it was not of such gravity as to require reversal of the judgment of conviction. The Supreme Court found that the testimony of the three psychiatrists was properly admitted to prove that Auld was legally sane and not in an amnesic state when he committed the crime as he had asserted.

The petition at bar is based on Section 2241 of Title 28, United States Code Annotated. Section 2254 of Title 28 provides that the writ of *habeas corpus* shall not be granted to a person in custody of a State court unless it appears that he has exhausted his State remedies or that there is an absence of State corrective process or an existence of circumstances rendering such process ineffective. If any remedy or procedure be available under the law of the State the prisoner must avail himself of it.[1]

Auld contends that he has exhausted all remedies available to him under the law of New Jersey and conversely that under that law he cannot raise now by way of application for *habeas corpus* any question relating to the alleged deprivation of his rights under the Fourteenth Amendment. Auld did not exhaust his state remedies for he failed to make application to

[1]. Section 2254 provides that, "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the mean-

ing of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C.A.

The Reviser's Notes, attached to 28 U.S.C.A., state in pertinent part, "This new section is declaratory of existing law as affirmed by the Supreme Court. (See Ex parte Hawk, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572.)." The Notes are to be regarded as authoritative in interpreting the meaning of the Code. United States v. National City Lines, 337 U.S. 78, 81, 69 S.Ct. 955, 959, 93 L.Ed. 1226.

the Supreme Court for a writ of certiorari within the time prescribed by law as we have pointed out. We entertain no doubt since Darr v. Burford, 339 U.S. 200, 70 S. Ct. 587, comparing Wade v. Mayo, 334 U. S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647, with Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572, that in order to exhaust state remedies application for certiorari must be made to the Supreme Court. But can the respondent warden's contention be maintained that Auld's failure to apply for certiorari in time is a barrier to granting the writ of *habeas corpus* in the instant case? The respondent cites the Hawk and Darr decisions as supporting this proposition. There is dictum in the Hawk case, 321 U.S. at pages 116, 117, 64 S.Ct. at page 450, which aids the respondent. It was said there that, "Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted." See also the authorities cited to the text in the Hawk decision at page 117 of 321 U.S., at page 450 of 64 S.Ct.[2] The most recent pronouncement by the Supreme Court on this subject is in Gusik v. Schilder, 340 U.S., 128, 71 S.Ct. 149.[3] It is in accord with the Hawk decision.

The principle expounded, however, is subject to the exception of "exceptional circumstances of peculiar urgency", referred to in so many of the cases, which may authorize the issuance of the writ by a United States court. See United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 18–19, 46 S.Ct. 1, 3, 70 L.Ed. 138. The petitioner here insists that the circumstances are extraordinary and of peculiar urgency because he cannot test the legality of his sentence by *habeas corpus* in New Jersey and because he has been sentenced to death. The fact that Auld has been sentenced to death will not in itself alone sustain the qualification of *extraordinary circumstances of peculiar urgency* in the eye of the law. If that fact had such standing every defendant sentenced to death would be entitled to test the validity of his sentence in the federal courts. If on the other hand the remedy of *habeas corpus* is not now available to Auld in the New Jersey Courts, that fact plus his death sentence, in our opinion would sustain the burden of the condition imposed by the Supreme Court decisions and the statute. But the possibility that the Supreme Court of New Jersey may take the precise position enunciated by it in State v. Auld, supra, assuming the writ to be available in a New Jersey State Court, is not a ground for the issuance of the writ by the court below as Auld asserts. We make this statement because it is clear that the avenue of certiorari to the Supreme Court of the United States would be open.

It would seem that the validity of Auld's conviction may not now be tested by the issuance of a writ of *habeas corpus* in a New Jersey State Court. A statute, 2 N.J.S.A. 2:82–13, subd. b, provides that a defendant detained by virtue of a final judgment of a competent tribunal of criminal jurisdiction may not "prosecute" the writ. Cf. 2 N.J. S.A. 2:82–12. But see 2 N.J.S.A. 2:80–5, and 2:82–48.1. Cf. Art. 6, Section 5, Par. 4 of the 1947 Constitution of New Jersey and Art. 1, Par. 14 of the same document. See also Waltzinger New Jersey Practice, Vol. 2, comment under Rule 3:81–1. Apparently the jurisdiction of the court which convicted the criminal or the constitutionality of the statute on which the

---

2. In respect to the five cases cited: In Tinsley v. Anderson, 171 U.S. 101, 18 S. Ct. 805, 43 L.Ed. 91, it would appear that a writ of error to the Supreme Court of the United States was still open to the petitioner for writ of *habeas corpus*. The same observation may be made in respect to Urquhart v. Brown, 205 U. S. 179, 27 S.Ct. 459, 51 L.Ed. 760, and in United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 46 S.Ct. 1, 70 L.Ed. 138. In Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, the question was whether the petitioner had exhausted the process whereby *habeas corpus* might be obtained in the state courts. Cf. Ex parte Abernathy, 320 U.S. 219, 64 S.Ct. 13, 88 L.Ed. 3.

3. Decided December 4, 1950.

indictment was based may be questioned but nothing else. See Ex parte Scridlow, 124 N.J.L. 342, 11 A.2d 837; Lanning v. Hudson County Court of Common Pleas, 127 N.J.L. 10, 21 A.2d 295, affirmed 127 N.J.L. 604, 23 A.2d 397, and Ex parte Rose, 122 N.J.L. 507, 6 A.2d 388. Cf. Ex parte Hall, 94 N.J.Eq. 108, 118 A. 347; Gehrmann v. Osborne, 79 N.J.Eq. 430, 82 A. 424. The Camden County Court had jurisdiction to try Auld for murder. Cf. McGarty v. O'Brien, 1 Cir., 180 F.2d 987, 990. It would seem to follow that under the law of New Jersey Auld may not test his conviction by collateral attack. We cannot be certain of this, of course. 2 N.J.S.A. 2:82–48.1 read in the light of Article 6, Section 5, Par. 4, New Jersey's 1947 Constitution, conceivably might authorize a test of Auld's conviction by the writ. We think there is an absence of State corrective process within the purview of Section 2254 of Title 28 United States Code Annotated. But if *habeas corpus* be sought, it must be pursued by Auld in the tribunals of New Jersey because the court below was not in error in denying the writ and Auld was not denied due process of law by the New Jersey courts.

In this connection we point out that Auld urges on us the same issues which he raised in the Supreme Court of New Jersey. They are stated in the forepart of this opinion. Only one of these warrants discussion here, viz., the written communication by the trial Judge with the jury. Auld's counsel refers to this as a "privy" communication with the jury as does the Supreme Court of New Jersey. We do not quarrel with this technical term but it is not aptly descriptive. What actually happened seems to be as follows. The jury had retired to consider its verdict. About an hour passed. The jury informed the trial Judge by a court constable that they desired instruction as to the five possible verdicts which they could render. The Judge had already charged the jury as to these verdicts. He summoned the court reporter, had the latter read to him his oral charge on this point, and wrote the possible verdicts in his own hand *verbatim,* on a piece of paper. Auld's counsel stated, "I am willing for them [the

jury] to have that piece of paper." The Judge's message was delivered to the jury which thereafter brought in a verdict of guilty as previously stated.

Auld contends that he was deprived of due process of law because he was entitled to be present at every stage of the proceeding and he was absent when the Judge's note was sent to the jury. In United States v. Johnson, 3 Cir., 129 F.2d 954, 960, 144 A.L.R. 182, affirmed on other grounds, 318 U.S. 189, 63 S.Ct. 549, 87 L. Ed. 704, we laid down the rule for this circuit that a defendant in a criminal trial must be present in the courtroom "at every stage of the proceeding which requires the presence of the jury." We said, "This is an absolute right." In that case Johnson had been tried in the District of New Jersey on the charge of income tax evasion. We were there dealing with a defendant's rights under the Fifth and Sixth Amendments in a trial which had been conducted in a court of the United States. Here we are concerned with a defendant's rights under the Fourteenth Amendment in a State criminal trial. The reach of the Fourteenth Amendment is not coextensive with that of the Fifth. It may in fact be broader or narrower but it is not identical. See Adamson v. California, 332 U.S. 46, 67 S. Ct. 1672, 91 L.Ed. 1903. The area is not a tidy one for history has been a bad housekeeper and there is some disparity between what the framers intended by the Amendment and what it accomplished.

It is, however, the weight of authority at present, and has been since Twining v. New Jersey, 211 U.S. 78, 29 S. Ct. 14, 53 L.Ed. 97, that the pervasive function of the Fourteenth Amendment is to exact from the States observance of basic liberties. See the concurring opinion in the Adamson case, 332 U.S. at page 66, 67 S. Ct. at page 1682. Due process under the Fourteenth Amendment "is not an equivalent for the process of the federal courts or for * *, * any particular state". See Bute v. Illinois, 333 U.S. 640, 649, 68 S.Ct. 763, 768, 92 L.Ed. 986. In the cited case Mr. Justice Burton also said that due process under the Fourteenth Amendment "has

reference rather to a standard of process that may cover many varieties of processes that are expressive of differing combinations of historical or modern, local or other juridical standards, provided they do not conflict with the 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions'", citing Hebert v. Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 71 L.Ed. 270. In Wolf v. Colorado, 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782, it was said by Mr. Justice Frankfurter that, "Due process of law * * * conveys neither formal nor fixed on narrow requirements. It is the compendious expression for all those rights which the courts must enforce because they are basic to our free society."

■ Although Auld argues vigorously that he was prejudiced by the learned trial Judge's actions in sending the written message to the jury prejudice is not shown. We think there was none. The Supreme Court of New Jersey in Auld's case, 2 N.J. at page 434, 67 A.2d at page 179, in fact adopted the rule laid down in Snyder v. Massachusetts, 291 U.S. 97, 114, 54 S.Ct. 330, 335, 78 L.Ed. 674. In that case Mr. Justice Cardozo said, "A defendant in a criminal case must be present at a trial when evidence is offered, for the opportunity must be his to advise with his counsel * * * and cross-examine his accusers". He said also that the presence of a defendant at his trial is a condition of due process only "to the extent that a fair and just hearing would be thwarted by his absence". See, 291 U.S. at page 108, 54 S.Ct. at page 333. Here there was no thwarting of a fair and just hearing. The note sent to the jury room only reiterated the judge's oral charge *in haec verba* and Auld's counsel expressly consented to this course of action. We cannot say that the sending of the note to the jury in Auld's absence was such error that his rights were violated. The Supreme Court of New Jersey, examining this very question with meticulous care, concluded that he had had a fair trial.

In our opinion Auld received due process of law under the Fourteenth Amendment.

The order of the court below denying the writ will be affirmed.

HASTIE, Circuit Judge (concurring).

I agree that petitioner's complaint of denial of due process should be considered on its merits and that, for the reasons stated by Chief Judge Biggs, the complaint is groundless and the judgment of the district court should be affirmed. Therefore, I associate myself fully with what to me appear to be the essentials of Judge Biggs' opinion. But the path I follow in reaching the merits of the petition diverges from that taken by Judge Biggs.

I prefer to express no opinion whether New Jersey courts can entertain a collateral attack upon petitioner's conviction or whether petitioner has exhausted his state remedy. Judge Biggs has indicated that the reach of habeas corpus in the courts of New Jersey is not clear. Therefore, I think we should avoid that question, if possible, until we get new light from New Jersey. Similarly, I would avoid passing upon the more general question of what constitutes exhaustion of state remedies. In certain aspects that question has recently divided and redivided the Supreme Court. It is now here in rather unusual aspect in a complicating context of uncertainty as to what the state law permits.

I think we are not required to decide these questions now. More particularly, it is unnecessary to consider whether, regardless of the merits of the present petition, Section 2254 of the Judicial Code precludes the granting of affirmative relief at this stage of the litigation.

The general grant of jurisdiction in habeas corpus which appears in Section 2241 of the Judicial Code, standing alone, would have sufficed to authorize the district court to entertain the present application for a writ of habeas corpus and to dismiss it on its merits.[1] The recently added Section

---

1. The development of statutory power in the federal courts to grant habeas corpus is traced in Note, 61 Harv.L.Rev.

657, 657–60 (1948); see also Note, 35 Col.L.Rev. 404 (1935).

2254 seems to present the only obstacle to that course here. It provides:

"§ 2254. State custody; remedies in State courts

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

In terms, that Section is no more than a statutory prohibition against granting relief in certain habeas corpus proceedings absent a showing of exhaustion or lack of state remedy. Both the Code revisers to whom we owe the text of this Section and the Supreme Court tell us that Section 2254 does no more than codify certain principles of public policy in the field of intergovernmental relationships which the courts of the United States had already invoked as a matter of appropriate self-restraint. Historical and Revision Notes to 28 U.S.C.A. § 2254 (1950); Darr v. Burford, 1950, 339 U.S. 200, 210–214, 70 S.Ct. 587. The restraint heretofore exercised has been bottomed on a desire to permit state courts first opportunity to review alleged state abuses of federal constitutional rights. The restraint was not a denial of power, but a refusal, as a matter of discretion, to act—to avoid "unseemly collisions". But see Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791. At times, the choice seems to have been assumed to be one between granting relief on the merits and dismissing the petition without any consideration of the merits. E.g. Ex parte Hawk, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; Urquhart v. Brown, 1907, 205 U. S. 179, 27 S.Ct. 459, 51 L.Ed. 760; Barton v. Smith, 9 Cir., 1947, 162 F.2d 330. It is obvious, however, that it is not an indignity to state processes to assert that a claim of this sort on its face or on a full record is clearly without merit. Cf. Ashe v. United States ex rel. Valotta, 1926, 270 U.S. 424, 46 S.Ct. 333, 70 L.Ed. 662. This is particularly true where, as here, the highest state court, on petitioner's appeal from his conviction, has thoroughly reviewed the issues raised and reached the same conclusion.

It should not be implied that Congress has gone any further than the Code revisers indicated in limiting the flexibility and adaptability to the exigencies of the particular claim which properly characterize the administration of the Great Writ. Therefore, I would construe Section 2254 strictly, limiting its effect on judicial power to its express terms and indicated intendment, and ruling that judicial power to dismiss a petition on its merits is not destroyed by the statutory limitation on the granting of affirmative relief.

Once it is concluded that there is power to dismiss this petition on its merits, common sense dictates that course. We are agreed that petitioner's claim of unfairness in his trial is groundless. The alternative to dismissal on the merits is a dismissal which sends the petitioner back to the state court to institute a collateral attack, without any assurance that the state courts have power to entertain the suit, but with the understanding that if the state courts and the Supreme Court do not help petitioner in that proceeding he may come again to us via the district court to be told then what is clear to us now, that his petition had no merit in first instance. However desirable such deference to the state courts may be where on the record there appears at least a doubtful question whether due process has been accorded a petitioner,[2] I think there is no point to circuitous rerouting of litigation in such circumstances as this case presents. I am satisfied that we have properly avoided requiring it.

2. Cf. Cooper v. Hutchinson, 3 Cir., 1950, 184 F.2d 119.