**McGARTY v. O'BRIEN, Warden.**

No. 50–84 M.C.

United States District Court,
D. Massachusetts.

Feb. 8, 1951.

James S. Seligman, Fall River, Mass., for petitioner.

Francis E. Kelly, Atty. Gen., Henry P. Fielding, Asst. Atty. Gen., Maurice M. Lyons, Dist. Atty. So. Dist. of Mass., New Bedford, Mass., for respondent.

McCARTHY, District Judge.

The Bristol County, Massachusetts Grand Jury returned an indictment on November 12, 1947, against Charles Mc-Garty, hereinafter sometimes called petitioner, for the murder of his niece. On motion, James Seligman, Esq., was assigned as counsel. The Clerk of the Superior Court gave notice to the Department of Public Health of the Commonwealth under Mass.G.L. (Ter.Ed.) c. 123, § 100A, as amended by St.1941, c 194, § 11, known as the Briggs Law, to cause petitioner to be examined with respect to his mental condition. He was examined by two psychiatrists, R. M. Chambers, M. D., and Roderick B. Dexter, M. D. Their report was in substance that the petitioner was not suffering from any mental disease or defect affecting his criminal responsibility, but that his "anti-social tendencies" warranted a diagnosis of psychopathic personality.

On January 15, 1948, a motion was filed by McGarty's counsel that the indigent defendant be allowed to employ two psychiatrists of his own choosing at the expense of the Commonwealth. This motion was denied by the judge of the trial court, and counsel saved his exception. Petitioner was found guilty of murder in the first degree and was sentenced to death.

Petitioner appealed to the Supreme Judicial Court, and the judgment was affirmed, Commonwealth v. McGarty, 323 Mass. 435, at page 437, 82 N.E.2d 603, at page 605, the Court stating in part, "We assume that the judge could have granted the motion (that he be allowed to employ psychiatrists of his own choosing at the expense of the Commonwealth) under G.L.(Ter.Ed.) c. 277, § 56. But the matter was discretionary. Nothing in the medical report and nothing in the record indicated that the defendant was not mentally responsible. We find no error in the denial of the motion."

McGarty then filed a petition in this court for a writ of habeas corpus, which was denied on the ground that it could not be said that the petitioner had exhausted State court remedies. McGarty v. O'Brien, D.C., 85 F.Supp. 415, 417. Whereupon McGarty appealed from the order of the court dismissing his petition. The order was affirmed by the Circuit Court of Appeals, McGarty v. O'Brien, 1 Cir., 180 F.2d 937, at page 989, in which it was said in part, "It is contended that the constitutional right of an indigent defendant in a capital case to court-appointed counsel is an empty right unless the state is also obliged to furnish such counsel the means to develop and present an appropriate defense. Obviously enough, an indigent defendant with assigned counsel may be at a disadvantage as compared with a wealthy defendant having unlimited means for the hiring of investigators, of expert witnesses, and of a battery of lawyers. How far the state, having the obligation to afford to the accused a fair trial, a fair opportunity to make his defense, is required under the due process clause to minimize this disadvantage is a matter which, in other contexts, may deserve serious examination. We simply note that no such broad constitutional question is presented on the record now before us * * *", and at page 990 of 180 F.2d, "The district court, in dismissing the petition for a writ of habeas corpus, did not adjudicate the merits of this constitutional claim, but took the ground that petitioner had not exhausted his remedies under state law. In affirming the order of the district court we similarly do not reach the merits." Certiorari was denied, 339 U.S. 966, 70 S.Ct. 1002.

McGarty then petitioned the Supreme Judicial Court of Massachusetts for a writ of error. The matter was heard by a single Justice of that court who denied the issuance of the writ. The petitioner excepted and it was held on review that the single Justice had not abused his discretion. McGarty v. Commonwealth, Mass., 95 N.E.2d 158. The court also considered the constitutional argument

made by the petitioner and concluded that "On principle the petitioner's contention is insupportable". Id., 95 N.E.2d at page 161. Certiorari was sought and denied November 25, 1950, 340 U.S. 886, 71 S.Ct. 199.

McGarty has now filed another petition for a writ of habeas corpus in this court, setting forth the denial by the Superior Court of Bristol County of the motion that he be allowed at the expense of the Commonwealth of Massachusetts to employ medical experts to examine him and assist him in determining the availability of the defense of insanity and preparing for trial; his lack of funds at that time and the present; the affirmance of the denial of the motion on appeal; that the denial of this opportunity to be examined by medical witnesses chosen by him was in violation of his constitutional rights under the Fourteenth Amendment to the Constitution and an assertion that all of his state remedies have been exhausted including a denial of certiorari by the Supreme Court of the United States.

The record establishes that the petitioner has sufficiently exhausted state court remedies, so as to give a Federal district court jurisdiction and entitle him to a hearing. 28 U.S.C.A. § 2254, Darr v. Burford, 339 U.S. 200, 214, 70 S.Ct. 587.

■ The fact that the federal contention of the petitioner has been considered by the highest State court, that a decision adverse to him has been rendered, McGarty v. Commonwealth, supra, and that the Supreme Court has declined review, are matters entitled to weighty consideration by a Federal district court on a subsequent petition for the Great Writ in determining whether the petitioner has been granted due process in the State courts. Gault v. Burford, 10 Cir., 173 F.2d 813; Stonebreaker v. Smyth, 4 Cir., 163 F.2d 498.

■ Where the Supreme Court denies certiorari after a decision by a State court on the merits of petitioner's constitutional contentions, a Federal district court will not ordinarily re-examine on habeas corpus the questions thus adjudicated. White

v. Ragen, 324 U.S. 760, 764, 65 S.Ct. 978, 89 L.Ed. 1348; Ex parte Hawk, 321 U.S. 114, 118, 64 S.Ct. 448, 88 L.Ed. 572; Salinger v. Loisel, 265 U.S. 224, 230–232, 44 S.Ct. 519, 68 L.Ed. 989.

This court can hardly be in doubt that the Massachusetts court considered and adjudicated on its merits the federal question presented by petitioner, reviewing his exception to the denial of his petition for a writ of error. In view of the above, therefore, it could be argued that it is superrogatory for this court to re-examine the merits of the federal question, because they have already been decided against the petitioner.

Unusual factors impel me however, to examine further the contentions of the petitioner to the effect that he has been denied what is guaranteed by the Due Process Clause, a fair hearing on the most serious of accusations and adequate opportunity to meet it.

■ First, questions presented by a petitioner for a writ of certiorari after an adjudication on the merits by a State court, are not res judicata on a subsequent petition for a writ of habeas corpus in a Federal district court. Darr v. Burford, supra, 339 U.S. at page 214, 70 S.Ct. at page 595. This court has the power to take the problem under consideration: indeed, the duty to do so.

Secondly, the statement that the Federal district court under these circumstances will not *ordinarily* re-examine the worth of the petitioner's contentions certainly cannot be taken to mean that where the State court has decided adversely to petitioner and the Supreme Court has denied certiorari, the District Court judge is to "rubber stamp" the decision already rendered. The hearing to which petitioner is entitled under 28 U.S.C.A. § 2254 would be meaningless, the tribunal having turned a deaf ear in his direction, despite its power and duty to interpret and safeguard the guarantees afforded an individual by the Constitution.

Thirdly, I am not content to seize upon a generalization as an easy "out" in a case which involves an individual right

more precious than earthly possessions, a right so sacred that it was embodied in the Magna Carta, and of such an imperishable value as to be preserved in our Federal and all of our State constitutions. In particular, I am not content so to do when presented with a matter which, in my opinion, is so serious that it goes to the very heart of due process.

The foregoing does not mean that the Federal district court is to disregard the fact of a decision by a State court on the merits of petitioner's federal contentions. On the contrary, such decision should be accorded the deliberation and respect due to it. It is a difficult task to consider anew a problem once decided by jurists as eminent and faithful as those who grace the bench of the Supreme Judicial Court. It is a duty, nonetheless, in an unusual situation such as this.

Petitioner has contended at the hearing on this application that the denial by the Superior Court of the petitioner's motion that he be allowed, at the expense of the Commonwealth, to employ medical experts of his own choosing to examine him, and if necessary, to testify in his behalf, offended some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. See Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674. This is the argument which was advanced before the Supreme Judicial Court, and found wanting. "In our opinion such a contention goes far beyond the implications of recent decisions of the Supreme Court of the United States in the line of cases, beginning with Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, many of which are cited in Allen v. Commonwealth, 324 Mass. 558, 562, 87 N.E.2d 192. Acceptance of such a contention would unwarrantably hamper the inherent power of the States to construct their criminal procedures in such fair and reasonable forms as they deem best adapted to secure a prompt and efficient administration of the criminal law, just to both the accused and the States. On principle the petitioner's contention is insupport-

able." McGarty v. Commonwealth, supra, 95 N.E.2d at page 161.

It became inescapably clear at the hearing on this petition that it has been the custom and practice of Superior Court judges to allow a motion to employ medical experts in circumstances similar to those in the instant case. Search by counsel for petitioner and for the Commonwealth has failed to produce another instance in which such a motion has been denied. In the present state of uncertainty with respect to psychiatric knowledge, the wisdom of the custom referred to, the hesitation to make a one-sided determination of the question whether at the time of the alleged crime the accused was insane or knew the difference between right and wrong, is obvious.

The answer to the question of sanity is still in the shrouds of conflict. The failure to follow this efficacious and invariable custom was not presented to the Supreme Judicial Court so far as an examination of the record and arguments discloses, as giving force to the petitioner's argument that a fundamental principle of justice had been offended. Consideration of this point, nonetheless, would not necessarily alter the determination that petitioner had not been denied the necessary elements of a fair trial to which he was constitutionally entitled.

■ Due process of law, of course, does not mean infallible process of law. Schechtman v. Foster, 2 Cir., 172 F.2d 339, 341. Nor does it require that a sovereign state afford to an indigent defendant in circumstances such as these the means to obtain the same witnesses, investigators and experts that could be obtained by the wealthy.

■ Due process, however, does require that the accused be given a fair trial, a fair opportunity to meet the charge against him, a fair opportunity to prepare his available defenses. Assuming in the instant case that the *only* defense available to the petitioner was that he was not guilty by reason of insanity, the question narrows itself to this. Did the Commonwealth of Massachusetts afford to the

accused a fair opportunity to prepare this defense?

The answer of the Supreme Judicial Court to this question is clear: the accused was given a fair opportunity to prepare his defense or to determine its availability because he had available to him the report of the psychiatrists appointed under the Briggs Law.

Does it shock one's sense of justice that the learned trial judge refused to grant assistance additional to that afforded by the Briggs Law? Did the action of the trial court, denying the petitioner the means of finding two medical experts of his own choosing to examine him with respect to his mental condition, violate our fundamental concept of fairness? I have given long and mature deliberation to these questions. I confess frankly that I have been much impressed by petitioner's argument that the only opinion available on the question of insanity was that of psychiatrists appointed by the State; that it would be folly, as a practical matter, to call as *his* witnesses, those whose testimony would be unfavorable to him; that psychiatric knowledge still flounders on the rocks of uncertainty; that the custom of allowing such a motion is indicative of an acknowledgement of its necessity in a fundamentally fair trial; that the only possible defense available was that of legal insanity; that assignment of counsel was an empty move without granting to him the means of developing or ascertaining the availability of this possible defense.

■ I have been impressed. On the other hand, it goes without saying that the burden is on the petitioner to show that he was denied due process of law, and I cannot say that the petitioner has sustained his burden.

Counsel for the petitioner is forced ultimately to adopt the contention that the court has no choice but to grant the motion where an indigent defendant with appointed counsel in a capital case desires to determine the availability of the defense of insanity and prays the trial court that he be allowed to employ psychiatrists of his own choosing to explore the possibility despite the fact that the State in accordance with its statutory provisions has already made available to him a report by competent doctors on this same question. He is forced to contend that Due Process denies to the court any discretion in the matter. This argument I cannot accept.

I cannot be unmindful that the trial judge, in circumstances such as these, is close to the situation which confronts him. In this case, for example, it is clear that when the court considered the motion which has become the subject of protracted proceedings, the judge had before him the psychiatric history of the accused. There was before him the fact that the petitioner had been interviewed four times by the doctors in connection with this crime after the case had been referred to them in September of 1947 and there was before him the final report submitted to the court by these psychiatrists under G.L.(Ter.Ed.) c. 123, § 100A. There was before him, apparently, no circumstance which could justify a conclusion that the petitioner was not responsible mentally for the act which he had committed, no circumstance which would necessitate a conclusion that the defense of insanity was available. The Due Process Clause certainly was not violated by a denial of the motion on this state of the facts. Indeed, the willingness with which the petitioner had made a coherent confession to the crime in detail, the revelation to his captors of his motives for the act, the clear narration of the sordid history of the hours preceding the death of the victim: these, coupled with the report of the psychiatrists whose integrity has never been the subject of question, serve to buttress the trial judge's conclusion that the petitioner's motion was without foundation and should be denied.

■ In view of the foregoing, I must conclude that the petitioner has not shown a "disregard of fundamental fairness" which would justify this court in granting him relief. However honest the claim of his counsel, however earnest his argument, I am not convinced that this

petitioner was not granted the basic essentials of a fair trial made mandatory by the Fourteenth Amendment.

The petition for the writ of habeas corpus is denied.