**UNITED STATES of America ex rel. Alvin R. DREW, Relator,**

v.

**David N. MYERS, Superintendent, State Correctional Institution, Graterford, Pennsylvania.**

**Misc. No. 2418.**

United States District Court
E. D. Pennsylvania.

Feb. 26, 1963.

Martin Heller, Philadelphia, Pa., for relator.

James C. Crumlish, Jr., Dist. Atty., Arthur J. Marion, Asst. Dist. Atty., Arlen Specter, Asst. Dist. Atty., Chief, Appeals Division, Philadelphia, Pa., for respondent.

CLARY, Chief Judge.

Alvin R. Drew is presently confined at the State Correctional Institution in Graterford, Pennsylvania, pursuant to conviction in the Philadelphia County Court of Common Pleas on charges of illegal possession and sale of narcotics. An appeal was taken to the Superior Court of Pennsylvania where the judgment of conviction and sentence of 7½ to 30 years were affirmed. Commonwealth v. Drew, 190 Pa.Super. 478, 154 A.2d 285 (1959). Relator was not personally notified of the Superior Court's decision until after the expiration of the time for appeal. Thus, review by the Supreme Court of Pennsylvania and the Supreme Court of the United States was not available.

Relator filed a petition for writ of habeas corpus in the Court of Common Pleas No. 4, Philadelphia County, June Term 1960, No. 1491, which was dis-

missed on July 29, 1960. The dismissal was affirmed by the Superior Court at October Term 1960, No. 379 on March 22, 1961, 194 Pa.Super. 329, 169 A.2d 126. The Pennsylvania Supreme Court refused allocatur and the United States Supreme Court denied certiorari at No. 478, October Term 1961, 368 U.S. 957, 82 S.Ct. 401, 7 L.Ed.2d 389.

A hearing was held in this matter before the Court on December 7, 1962. Relator and other witnesses were present and testified, and both counsel have briefed all questions presented. After close consideration of the testimony, briefs, petition and amended petition, the Court feels that relator's position can be accurately stated as follows:

(a) The trial Court's denial of relator's request for a continuance to find Thomas Sherwood, an alleged alibi witness, was a denial of liberty without due process of law.

(b) The trial Court's denial of relator's request for a continuance to call Irving Carter, a witness connected with the transactions, and the refusal of the Court to compel the Commonwealth to call him was a denial of liberty without due process of law.

Alvin Drew was arrested in Philadelphia on January 29, 1958 for the alleged possession and sale of narcotics and indicted on February 11, 1958. On February 26, 1958, Drew's counsel received notice that trial was set for March 5, 1958. On the afternoon of that day, Drew's counsel went before the trial judge and advised him that the defense would be an alibi, but that time was needed to find Thomas Sherwood, with whom Drew claimed to have been in New York at the time of the offense. The trial judge stated that counsel had had sufficient time to work it out and the motion for continuance was refused.

On the morning of the last day of trial, Monday, March 10, 1958, Drew's counsel informed the trial Court that Sherwood had been located in New York, but was reluctant to come to Philadelphia. The Court stated that, "if he is here by 2:00 P.M., we will take his testimony, otherwise there will be no more witnesses." Sherwood did not appear and no further continuance was allowed.

Two cases are offered in support of relator's argument that the trial Court's refusal to grant a continuance to enable him to obtain the testimony of Sherwood was a denial of due process. Paoni v. United States, 281 F. 801 (3 Cir. 1922) and MacKenna v. Ellis, 280 F.2d 592 (5 Cir. 1960).

In Paoni v. United States, the Federal District Court refused defendant's motion for a continuance which was requested when defendant's witnesses could not be produced in time. On a writ of error, the Third Circuit Court of Appeals held that the lower Court had abused its discretion. The Sixth Amendment gives defendants in Federal Courts a right to compulsory process for witnesses. While this is not an absolute right, the trial Court in Paoni gave no reason on the record for the refusal, and thus a new trial was necessary.

Relator does not urge that the Sixth Amendment's right to compulsory process is applicable to the states under the Fourteenth Amendment. However, he does urge that standards established under the Sixth should be considered in judging the fundamental fairness of state actions. It is in this respect that MacKenna v. Ellis is cited. This case came before the Fifth Circuit on a petition for writ of habeas corpus by a state prisoner who had been brought to trial at such a time as to make it impossible for his witnesses to appear. The Court held, citing Paoni, that this factor, counted with several others, resulted in a denial of liberty without due process. The several other factors involved—short notice of trial, appointment of inexperienced counsel over defendant's protest, conflict of interest of defendant's counsel, and lack of vigorous efforts by defendant's counsel.

Neither of these cases is of great bearing on the instant case. Paoni was de-

cided by the direct application of the Sixth Amendment, an approach which is not open here. The MacKenna case, although citing Paoni in its discussion of the necessity for the granting of a continuance, must be recognized as dependent for its result upon the numerous earlier enumerated factors which, when considered together, resulted in a denial of liberty without due process of law. Certainly the record in this case is not a parallel.

There can be little debate that the practice in both the Federal Courts and the Courts of Pennsylvania is that questions of continuance must be decided by the sound discretion of the trial Court. In Franklin v. South Carolina, 218 U.S. 161, 30 S.Ct. 640, 54 L.Ed. 980 (1910), the United States Supreme Court found that there was no denial of due process in the refusal of a continuance by the state Court requested by defendant's counsel who had not had time to read notes of testimony taken before a Coroner. The Court said 218 U.S. at page 168, 30 S.Ct. at page 643:

> "It is next contended that the plaintiff in error was denied due process of law in the refusal of the court to continue his case when the same was called for trial. It is elementary that the matter of continuance rests in the sound discretion of the trial court, and its action in that respect is not ordinarily reviewable. *It would take an extreme case to make the action of the trial court in such a case a denial of due process.*" [Emphasis supplied.]

See also: Frohwerk v. United States, 249 U.S. 204, 210, 39 S.Ct. 204, 63 L.Ed. 561 (1919). The Pennsylvania Court which tried relator was likewise acting under a similar practice of trial Court discretion. Commonwealth v. Hicks, 173 Pa.Super. 395, 397–398, 98 A.2d 478 (1953); Commonwealth v. Speroff, 169 Pa.Super. 197, 199, 82 A.2d 569 (1951); Commonwealth v. Grosso, 169 Pa.Super. 606, 609, 84 A.2d 239 (1951).

Under the Supreme Court's decisions, the bounds of due process are breached only where the refusal of a continuance is an extreme abuse of discretion. There is nothing on the record of this case to indicate that there has been any abuse of discretion, let alone one of such magnitude to amount to a violation of constitutional rights. The rule which prevents reviewing Courts from overturning the discretionary acts of a trial judge is proper and necessary. The trial judge is closest to the immediate situation, aware of all circumstances and conditions. His decisions must often be guided by relevant conditions which may not show clearly on the record. Absent a clear showing of abuse, it is not for this Court, sitting in a factual vacuum, apart from the realities of the trial, to find that the trial Court was so wrong and unfair that relator has been denied of his liberty, without due process of law.

No facts have been presented to the Court which were not presented to the trial Court. On the basis of these facts, the trial Judge did not feel that a continuance was warranted, stating that in his opinion, relator's counsel had sufficient time to work out this problem. Relator has presented, and the Court can find, nothing in the record to indicate that this was not so. To sustain relator's position on this point would require the Court to engage in guesswork, going beyond the record, and forming an independent theory of what may or may not have happened at the trial. Such is not the function of a District Court considering a petition for writ of habeas corpus.

The testimony that relator claims Sherwood would have given would certainly have been relevant and there has been no attempt to deny that. However, the existence of Sherwood was at all times somewhat cloudy, and the possibility of his showing up to testify was even more doubtful. Further, relator has yet to produce Thomas Sherwood before any Court, either in person or by deposition. While this latter fact was not before the trial Judge and is really hindsight not

material to the issue, it is some indication that the trial judge acted wisely. However, since it was not necessary for relator to produce his alleged witness at this time, the Court places no importance upon this facet of the case, although an affidavit from the witness certainly would not have weakened his case and would have corroborated the hearsay testimony presented.

Having presented no showing of an abuse of discretion, let alone an extreme abuse, in the refusal of this continuance, relator has failed to demonstrate any denial of due process.

■ The second claim, that the trial Court's denial of relator's request for a continuance to call Irving Carter, a witness connected with the transaction, and the refusal of the Court to compel the Commonwealth to call him, was a denial of due process, is subject to the same considerations. However, some further amplification is necessary.

The Commonwealth's principal witness was Harold Carter, an undercover agent for the Philadelphia Police. He testified that on September 5, 1957, he met Irving Carter (apparently no relation) in West Philadelphia and was walking with him when they saw Alvin Drew. Irving left Harold, walked over to relator, returned to Harold and held a conversation. Harold Carter stated that he then approached Drew and purchased narcotics. At the time of the transaction, Irving Carter was about ten feet away.

Relator originally contended that Irving Carter was an eyewitness to the alleged crime and that it was the duty of the Commonwealth to call him. While agreeing that an eyewitness should be called, the Superior Court, on appeal of this case, has already pointed out that there is nothing in the record to indicate that Irving Carter was an eyewitness. Commonwealth v. Drew, 190 Pa. Super. 478, 154 A.2d 285 (1959). With this the Court agrees.

Relator now argues that Irving Carter could have testified as to the identity of Alvin Drew, which was at issue because of the alibi defense. For this reason, a continuance should have been allowed, or the Commonwealth should have been required to produce him. Relator urges that "common fairness", which he equates with "due process", makes it the duty of the Commonwealth to produce all witnesses where testimony is germane to the issue, citing Commonwealth v. Cramer, 168 Pa.Super. 1, 76 A.2d 661 (1950). In the Cramer case, the Superior Court held that certain witnesses should have been called. However, the record in that case clearly indicated that the absent witnesses could aid greatly in reaching the truth. Further, the Cramer case came to the Superior Court on appeal and there was no question of due process decided. The Court did not indicate that what it called "common fairness" was to be equated with "due process." In Commonwealth v. Drew, the Superior Court acknowledged that Irving Carter should have been called if his testimony was germane or tended to get to the truth, but the Court apparently did not find that Carter's testimony would have been of such value. The trial Court was of the same opinion and relator has shown nothing that should cause this Court to come to a different conclusion.

These considerations, coupled with the earlier comments on discretion of the trial Court, compel the Court to conclude that relator has failed to show any denial of due process in his second claim.

Having failed to demonstrate that he is being denied his liberty without due process of law, relator's petition for writ of habeas corpus must be denied.