**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2068
_____

CRYSTAL HARRIS; KADEYJA DIXON-FOWLER,
Appellants

v.

DISTRICT ATTORNEY LARRY KRASNER; BRIAN
KEAN, ASSISTANT DISTRICT ATTORNEY; CITY OF
PHILADELPHIA; PHILADELPHIA DISTRICT
ATTORNEY'S OFFICE

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-22-cv-00839)
District Judge: Honorable Joel H. Slomsky

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 3, 2024

Before: HARDIMAN, PORTER, and AMBRO, *Circuit
Judges*.

(Filed: June 6, 2024)

Sharon Gilbert Timm
5410 Simpson Circle
Doylestown, PA 18902

    *Counsel for Appellants*


Jennifer MacNaughton
Senior Attorney, Appeals
City of Philadelphia Law Department
1515 Arch Street, 17th Floor
Philadelphia, PA 19103

    *Counsel for Appellee City of Philadelphia*


Ira Neil Richards
Dilworth Paxon LLP
1500 Market Street, Suite 3500E
1515 Arch Street, 17th Floor
Philadelphia, PA 19101

    *Counsel for Appellees District Attorney Defendants*

———————————————

OPINION OF THE COURT

———————————————

HARDIMAN, *Circuit Judge*.

Crystal Harris and her daughter, Kadeyja Dixon-Fowler, sued the City of Philadelphia and its District Attorney's Office, District Attorney Larry Krasner, and Assistant District Attorney Brian Kean, seeking damages and injunctive relief. Plaintiffs claim Defendants violated their

2

rights under the United States and Pennsylvania Constitutions by disclosing Internal Affairs Division (IAD) complaints filed against Harris. Harris also claimed that Defendants violated her state and federal rights by barring her from testifying as a trial witnesses. The District Court dismissed the suit and Plaintiffs appeal. For the reasons that follow, we will affirm.

I

Harris, a 23-year veteran of the Philadelphia Police Department, learned in 2020 that the Philadelphia District Attorney's Office had disclosed IAD complaints against her to defendants when she had testified as a prosecution witness.[1] These disclosures included a 2014 complaint in which Harris's former domestic partner accused her of abusing her authority. Harris's partner made this complaint after Harris reported him for sexually abusing Dixon-Fowler. Harris claims IAD investigated the complaint, "determined it was unfounded," and "agreed" in 2017 "that any evidence of . . . alleged lying during an official investigation would be expunged" from Harris's disciplinary file. App. 40.

In 2021, after Harris and another officer arrested a motorist for driving under the influence, Assistant District Attorney Brian Kean emailed Harris's supervisor "stating he was declining prosecution . . . because it was not clear which officer did what during the arrest" and because "Harris was Do Not Call." App. 37. According to the complaint, "Do Not Call"

---

[1] At this stage in the proceedings, we take all well-pleaded facts in the operative complaint as true and make all reasonable inferences in Harris's and Dixon-Fowler's favor. *See Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017).

refers to the District Attorney's "Do Not Call List"—a roster of police officers whom the District Attorney will not call to testify in court because of IAD complaints filed against them.

Harris and Dixon-Fowler sued District Attorney Larry Krasner and Assistant District Attorney Brian Kean (together, the Prosecutors) as well as the City of Philadelphia and its District Attorney's Office (together, the City). They sought damages and equitable relief under 42 U.S.C. § 1983, the Pennsylvania Constitution, and state common law.

Harris claimed Defendants violated her First Amendment right to testify and deprived her of overtime pay for court appearances without due process in violation of the Fourteenth Amendment. Harris and Dixon-Fowler also sought to enjoin the Prosecutors from disclosing "any . . . information . . . relating to either [Harris's] expunged IAD complaint . . . or [Dixon-Fowler's] sexual assault . . . in . . . any future criminal prosecution," claiming these disclosures harmed reputational interests protected by the Pennsylvania Constitution. App. 43. Finally, Plaintiffs argued that Defendants were liable for intentional infliction of emotional distress under Pennsylvania law because the disclosure of Dixon-Fowler's sexual assault and the designation of Harris as "Do Not Call" had caused "serious psychological and emotional harm." App. 45.

The District Court granted Defendants' motion to dismiss. It concluded that Plaintiffs had failed to allege a violation of a constitutional right and that the Prosecutors were immune from suit. *See Harris v. Krasner*, 2023 WL 3431233, at *7–12 (E.D. Pa. May 12, 2023). Harris and Dixon-Fowler

4

timely appealed.[2]

## II

### A

Harris claims the District Court erred when it held that the Prosecutors were entitled to absolute immunity on her § 1983 claims. "[P]rosecutors are absolutely immune from liability in § 1983 lawsuits" for "their official actions," including "actions that are intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (cleaned up). Absolute prosecutorial immunity derives from the "public policy" "'concern that . . . unfounded litigation' could both ' . . . deflect[] . . . the prosecutor's energies from his public duties' and also lead . . . [him] to 'shade his decisions instead of exercising the independence of judgment required by his public trust.'" *Id.* at 341 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976)). We agree with the District Court that Defendants' disclosure of Harris's IAD complaint in discovery material and their refusal to call Harris as a witness are "prosecutorial function[s]" protected by absolute immunity. *Harris*, 2023 WL 3431233, at *9.

The Prosecutors disclosed Harris's IAD file, including the complaint alleging abuse of authority in Dixon-Fowler's

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's order granting a motion to dismiss. *See Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

5

case, to comply with their obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* requires the prosecution to disclose evidence "favorable to the accused, either because it is exculpatory, or impeaching," including evidence "which may well alter the jury's judgment of the credibility of a crucial prosecution witness." *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 284, 287 (3d Cir. 2016) (cleaned up).

The Supreme Court's decisions in *Imbler v. Pachtman* and *Van de Kamp v. Goldstein* explain that prosecutors are afforded absolute immunity in fulfilling their *Brady* obligations. "[D]etermining what information" from Harris's Internal Affairs file to disclose "require[s] legal knowledge and the exercise of related discretion." *Van de Kamp*, 555 U.S. at 344. It is thus "'intimately associated with the judicial phase of the criminal process' because it concern[s] the evidence presented at trial," *id.* at 345 (quoting *Imbler*, 424 U.S. at 430), and "[p]reparation . . . for a trial," *Imbler*, 424 U.S. at 431 n.33.

Harris responds that her IAD file contains "not [*Brady*] material," but "false . . . claims brought by [a] convicted rapist" in retaliation "against Harris for reporting the rapes." Harris Br. 11–12. She notes further that the IAD determined that the allegations were "unfounded" and agreed to "expunge[] [the complaint] from her personnel file." Harris Br. 7. Because the file does not contain *Brady* material, Harris argues, the District Court erroneously held that Defendants' disclosure of the file was protected by absolute immunity. We disagree.

Harris's IAD file contained a complaint alleging that Harris had abused her authority. It is possible that a prosecutor's *Brady* obligations may, in some cases, include a duty to disclose "[a]n internal investigation report" accusing a

6

testifying officer of "lying during the course of h[er] official duties" or "abus[ing] h[er] authority to get what [s]he wants." *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013). But even assuming, as Harris argues, that her IAD file does not contain *Brady* material, or that "unsubstantiated allegations against a government witness" need not be disclosed under *Brady*, *see United States v. Souffront*, 338 F.3d 809, 823 (7th Cir. 2003), the Prosecutors would still be entitled to absolute immunity.

> If absolute immunity is to serve its purpose, the line between official conduct, as to which there is immunity, and extra-official conduct, as to which there is not, must . . . leave[] officials room for good faith mistakes about the extent of their authority. Thus, if the circumstances in a particular case were such that a reasonable prosecutor in the defendant's position *could* have had a good faith belief that he was authorized by his office to act as he did, immunity will be recognized. In such a case, an allegation that the official acted in bad faith, knowing his conduct to be unauthorized, will not strip the official of absolute immunity. Similarly, absolute immunity will be available, in such a case, *even if the authority in fact was lacking under the law*. Stated conversely, immunity will be denied only for those acts which a reasonable prosecutor would recognize as being clearly outside his jurisdiction to represent the state before the court.

*Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 502 (3d Cir. 1997) (second emphasis added) (cleaned up). In short, whether the Prosecutors are entitled to absolute immunity turns not on whether the allegedly expunged complaint was properly disclosed as *Brady* material, but whether the Prosecutors *could* have had *any* good faith basis to believe that they could disclose the complaint when Harris testified as a witness. We conclude that they did.

As we have emphasized, prosecutors have an obligation to "inspect" an arresting officer's personnel file and "disclose impeachment material that is exculpatory to the defendant," *United States v. Dent*, 149 F.3d 180, 191 (3d Cir. 1998), and the Ninth Circuit has held that *Brady* may, in some cases, compel disclosure of allegations that a testifying officer has abused her authority, *see Milke*, 711 F.3d at 1012. And although Harris alleges that the complaint was expunged, we know of no authority holding that expunged or dismissed complaints against an arresting officer can never be disclosed under *Brady* and its progeny. Rather, "the prudent prosecutor will resolve doubtful questions in favor of disclosure." *United States v. Agurs*, 427 U.S. 97, 108 (1976). Thus, we hold that the Prosecutors had a good-faith basis to believe they were authorized—if not compelled—to disclose Harris's IAD complaint. Accordingly, the Prosecutors' disclosure of Harris's IAD file is a "quasi-judicial" function protected by

"absolute immunity from [§] 1983 suits." *Imbler*, 424 U.S. at 420.[3]

The same is true of the Prosecutors' decision not to call Harris as a witness. "[T]he duties of the prosecutor . . . involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom," including "*which witnesses to call.*" *Mancini v. Lester*, 630 F.2d 990, 994 n.6 (3d Cir. 1980) (quoting *Imbler*, 424 U.S. at 431 n.33) (emphasis added). Like our sister courts, we conclude that prosecutors have absolute immunity from suits challenging their strategic decision not to call a police officer as a witness, *see Savage v. Maryland*, 896 F.3d 260, 270 (4th Cir. 2018), or their decision not to prosecute a case, *see Roe v. City and County of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997).

Harris's First Amendment § 1983 claim against the City fares no better. "[F]or *Monell* liability to attach, there must still be a violation of the plaintiff's constitutional rights." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 n.13 (3d Cir. 2020) (cleaned up). Harris has no unqualified right to testify in any trial she pleases, nor to compel the District Attorney's Office "to prosecute . . . [her] cases." *Savage*, 896 F.3d at 271. Indeed, "the prosecution has no duty to call *any* witness . . . if it believes after examination or investigation that [her] testimony is either *unreliable*, surplusage, or irrelevant."

---

[3] In reaching this conclusion, we assume that the complaint in Harris's IAD file was deemed unfounded and was later expunged. *See Blanyar*, 861 F.3d at 431. So we need not consider Harris's broader IAD file or Defendants' assertion that the IAD sustained misconduct allegations filed against Harris.

9

*United States ex rel. Drew v. Myers*, 327 F.2d 174, 179 n.16 (3d Cir. 1964) (emphasis added). Because Harris has failed to allege any freedom of speech violation, her First Amendment § 1983 claim fails.

B

Harris also argues that the District Court erroneously dismissed her Fourteenth Amendment § 1983 claim. She contends that her placement on the Do Not Call List and inability to testify about her arrests resulted in the deprivation of her public employment without notice or a hearing. The District Court held that the Prosecutors had absolute immunity from this claim because "[t]he decision to include police officers on the Do Not Call List is 'directly connected with the conduct of a trial'" and "require[s] legal knowledge and the exercise of related discretion." *Harris*, 2023 WL 3431233, at *9 (quoting *Van de Kamp*, 555 U.S. at 344). We agree.

As for Harris's reputational argument, the District Court concluded that the Prosecutors had absolute immunity, so it did not consider whether Harris's placement on the Do Not Call List harmed her reputational interests under the First or Fourteenth Amendment. But "reputation alone, apart from some more tangible interests such as employment," does not implicate a liberty or property interest "by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 701 (1976); *see also Clark v. Twp. of Falls*, 890 F.2d 611, 619–20 (3d Cir. 1989).

In sum, the Prosecutors' disclosure of Harris's IAD file and their decision to place her on the Do Not Call List did not deprive her of any interest protected by the United States Constitution, and Harris cannot sustain her § 1983 claim on

reputational harm alone. So the District Court properly dismissed this claim as to all Defendants.[4]

C

Harris and Dixon-Fowler argue that the Prosecutors' disclosure of Harris's IAD file violated their "right to protect [their] reputation[s]" under the Pennsylvania Constitution. App. 43 (citing Pa. Const. art. I, §§ 1, 11). Citing *Fraternal Order of Police Lodge No. 5 by McNesby v. City of Philadelphia*, 267 A.3d 531, 535 (Pa. Commw. Ct. 2021), the District Court denied Plaintiffs' request to enjoin the District Attorney's Office from disclosing information relating to Harris's IAD complaint or Dixon-Fowler's sexual assault in any future criminal prosecutions. *See Harris*, 2023 WL 3431233, at *10. As the District Court emphasized, the Commonwealth Court denied the police union's request "to enjoin [District Attorney] Krasner from creating and maintaining an internal Do Not Call List, *or from disclosing potentially exculpatory or impeachment information to criminal defense counsel.*" *FOP Lodge*, 267 A.3d at 544 (emphasis added).

Because Harris sought "the same relief" denied in *FOP Lodge*, the District Court rejected her request to "enjoin the

---

[4] We decline to consider Harris's and Dixon-Fowler's argument that Defendants violated their Fourteenth Amendment due process rights by revealing "personal[,] private information about Harris and Dixon-Fowler to the public in court." Harris Br. 12. Plaintiffs did not make this argument in the District Court, so it is forfeited. *See Simko v. U.S. Steel Corp.*, 992 F.3d 198, 205 (3d Cir. 2021).

11

District Attorney from fulfilling its obligations under *Brady* and *Giglio*." *Harris*, 2023 WL 3431233, at \*10. The District Court did not err in this conclusion. "[N]otion[s] of comity" and "a proper respect for state functions" militate against enjoining the Prosecutors from complying with their *Brady* obligations. *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 132 (3d Cir. 2014) (cleaned up).

In response, Plaintiffs argue that the District Court misreads *FOP Lodge*. It is true that the Commonwealth Court afforded the *FOP Lodge* plaintiffs some relief, but it was not the same relief that Harris and Dixon-Fowler now seek. The Commonwealth Court denied the *FOP Lodge* plaintiffs' request to enjoin the District Attorney's disclosure of potentially exculpatory material. But it held that plaintiffs had stated a claim that the City "deprived them of their fundamental rights to reputation without due process" under the Pennsylvania Constitution by failing to give exonerated officers an "opportunity to argue why they should not be on the Do Not Call List before it is disclosed to the public." 267 A.3d at 538, 545.

To be sure, the *FOP Lodge* court held "the trial court erred by . . . concluding . . . that the appellant police officers [were] not entitled to prior notice that they [were] being considered for placement on the . . . Do Not Call List or afforded a[n] . . . opportunity to be heard concerning whether they should be removed from the . . . List." *Id.* at 553. But Harris and Dixon-Fowler seek a broad injunction barring the Prosecutors from sharing Harris's complaint file in any future *Brady* disclosures—the very relief the *FOP Lodge* court denied. *See Harris*, 2023 WL 3431233, at \*10. So the District

12

Court properly dismissed Plaintiffs' claim for injunctive relief under the Pennsylvania Constitution.[5]

D

Lastly, Harris and Dixon-Fowler argue that the District Court erred in dismissing their common-law claim for intentional infliction of emotional distress. We agree with the District Court that this claim is barred by high public official immunity and Pennsylvania's Political Subdivision Tort Claims Act (PSTCA).

As for the claim against the Prosecutors, "[t]here is no question that the doctrine of high official immunity applies . . . to claims for intentional infliction of emotional distress," *Feldman v. Hoffman*, 107 A.3d 821, 835 (Pa. Commw. Ct. 2014), *appeal denied*, 121 A.3d 497 (Pa. 2015), or that it applies to district attorneys and assistant district attorneys, *see Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001). And the Prosecutors' disclosure of Harris's IAD file and their decision not to call Harris as a witness are "actions taken in the course of the official[s'] duties or powers and within the scope of [their] authority." *Id.* at 69 (cleaned up).

As for the City, "it is well-settled that where a plaintiff has averred willful misconduct on the part of local agency employees, [the PSTCA] bars recovery from the local agency because liability may be imposed . . . only for negligent acts,"

___

[5] Nothing in our opinion prevents Harris from asserting that her placement on the Do Not Call List without notice and a hearing violates her reputational interests and due process rights under the Pennsylvania Constitution.

*Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Commw. Ct. 2014), "not . . . willful misconduct," 42 Pa.C.S. § 8542(a)(2).[6] And "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (cleaned up).

So the District Court did not err in dismissing the claims against the Prosecutors and the City for intentional infliction of emotional distress.

\* \* \*

For the reasons stated, we will affirm the District Court's order dismissing Plaintiffs' claims against the Prosecutors and the City.

---

[6] Both the City of Philadelphia and the District Attorney's Office are "local agenc[ies]" under the PSTCA. *See Maloney v. City of Philadelphia*, 535 A.2d 209, 211 (Pa. Commw. Ct. 1987); *Pettit v. Namie*, 931 A.2d 790, 798 (Pa. Commw. Ct. 2007).